IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JESSICA L. COLLIER | * | |
| Plaintiff | * | |
| v. | * | Civil Action No.: JFM 06-CV-1209 |
| COMCAST OF BALTIMORE CITY, INC. | * | |
| Defendant | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT COMCAST OF BALTIMORE CITY'S, INC.'S MOTION TO DISMISS UNDER FED. R. CIV. PRO 12(B)(6) OR, ALTERNATIVELY, FOR SUMMARY JUDGMENT UNDER FED. R. CIV. PRO. 56**

Defendant Comcast of Baltimore City, Inc. ("Comcast"), by its attorneys, respectfully submits this Memorandum of Law in support of its Motion to Dismiss under Fed. R. Civ. Pro. 12(b)(6) or, Alternatively, for Summary Judgment under Fed. R. Civ. Pro. 56 (the "Motion") as to Plaintiff's Complaint.

## INTRODUCTION

Plaintiff Jessica Collier a/k/a Jessica Robinson is a recidivist plaintiff, having filed numerous cases in both her married name of Jessica Robinson as well as a co-plaintiff with her husband Arthur Robinson. For this reason, *inter alia*, Chief Judge Legg has ordered Arthur Robinson's deposition in *Robinson v. General Electric Capital Corp.* and *Robinson v. Providian Bancorp Servs.*, Case Nos. L-06-955 and L-06-977, respectively. A copy of that Order is attached <u>Exhibit A</u>. Moreover, Plaintiff filed her Complaint in this case using her maiden name instead of her legal (married) name and an old address, 1123 N. Eutaw Street, Baltimore, Maryland. In previously filed lawsuits, Plaintiff has used her legal (married) name, Jessica Robinson, and numerous other addresses. *See, e.g., Jessica Robinson v. Client Services, Inc.*, Case No. 04-CV-04029-WDQ; *Jessica Robinson v. Collectcorp, Inc.*, Case No. 05-CV-00771-WDQ; *Jessica A. Robinson v. American Honda Finance Corp.*, Case No. 06-CV-00310-AMD.

Plaintiff represented that her present address is 223 Hebb Road, Hagerstown, Maryland 21740, which is the same address used by her husband in numerous lawsuits. This raises serious questions about whether this case was filed in good faith. In any event, as set forth below, Plaintiff's Complaint is fatally flawed and should either be dismissed under Fed. R. Civ. Pro. 12(b)(6) or, alternatively, summary judgment should be granted in favor of Comcast under Fed. R. Civ. Pro. 56.

## FACTS

Comcast is in the business of providing, among other things, cable television services. On or about February 3, 2006, Plaintiff moved to 1123 North Eutaw Street, Apt. #707, Baltimore, MD 21201. Plaintiff established cable television services at that location through Comcast's website. (Compl. ¶ 3.)[1] On or about February 10, 2006, Plaintiff received a letter from Comcast asking her to verify her identity and requesting copies of her social security card as well as copies of her driver's license. That letter stated that, if the requested information was not faxed within 10 days, Plaintiff's services would be disconnected. Plaintiff faxed this information to Comcast on February 15, 2006. (*Id.* ¶ 5.) On or about March 1, 2006, Plaintiff received a second letter from Comcast asking for identity verification information. Plaintiff called Comcast and was told to ignore this letter. (*Id.* ¶ 6.)

On or about April 3, 2006, Plaintiff's roommate, Jennifer Pratt, informed Plaintiff that her cable television service was not working. Ms. Pratt contacted Comcast and was allegedly told Plaintiff's cable television service had been cancelled, but not due to non-payment. (*Id.* ¶ 7.) Plaintiff then called Comcast and was told her service was terminated due to non-payment in the

---

[1] Unless otherwise stated, the facts stated herein are as asserted in Plaintiff's Complaint. Comcast accepts these facts to be true for purposes of this Motion only.

amount of $3.55. (*Id.* ¶ 8.) Plaintiff asked to speak with a supervisor. After waiting approximately 40 minutes, she hung-up. (*Id.*) Later that night, a Comcast supervisor called and left a message on Plaintiff's cell phone that "any rep can help you with your problems." (*Id.* ¶ 9.)

On or about April 6, 2006, Plaintiff sent an email to customer service asking why her service was cancelled and why there was a contradiction in the phone calls. Plaintiff explained in that same email that her bill was paid in full. Comcast responded that "this is a credit and collection issue." (*Id.* ¶ 10). Plaintiff sent a follow-up email asking what the specific problem was, and got a response back via email saying to call a customer service representative, saying "we cannot discuss it over email." (*Id.* ¶ 11.)

Plaintiff initiated an online chat with customer service that same day. After verification of her identity, Plaintiff was told that her account was current and not past due, and that it was not a collection issue, but the account was cancelled "due to Equifax's decision." (*Id.* ¶ 12.) Plaintiff claims this statement was false because Equifax "merely provides credit reports and verifies the identities of consumers for Defendant." (*Id.* ¶ 13.) Plaintiff asserts that her "cable television service was terminated on April 3, 2006, apparently due to what was contained within her consumer report on file with Equifax." (*Id.* ¶ 14.)

On May 9, 2006, Plaintiff filed a complaint claiming Comcast terminated of her cable television service in violation of the Equal Credit Opportunity Act, 15 U.S.C. § 1691, *et seq.* (the "ECOA"). (*Id.* ¶ 16.) Plaintiff further alleges that Comcast failed to notify her as to why her service was cancelled in violation of "section (d)(2)(A) and (d)(1)(6) [sic]" of the ECOA. (*Id.* ¶ 17.) Comcast does not regularly extend, renew or continue credit to its customers. (*See* Declaration of Micahel Parker at ¶¶ 5-6, attached as <u>Exhibit B</u>.) Rather, it requires its customers to pay each month for their cable television service. (*Id.* at ¶ 7.) Thus, the ECOA

does not apply. Accordingly, Plaintiff's Complaint should be dismissed pursuant to Fed. R. Civ. Pro. 12 or, alternatively, summary judgment should be granted in Comcast's favor under Fed. R. Civ. Pro. 56.[2]

**ARGUMENT**

**I.    STANDARD OF REVIEW**

    **A.    Motion to Dismiss Under Fed. R. Civ. Pro. 12(b)(6)**

A motion to dismiss under Fed. R. Civ. Pro. 12(b)(6) is the proper method of testing the legal sufficiency of a complaint. *Thompson v. Mayor and Town Council of La Plata*, No. Civ. A. AW-00-2553, 2001 WL 436158, at *2 (D. Md. April 13, 2001). Dismissal is appropriate where, as here, it is clear that Plaintiff can prove no set of facts in support of her claim which would entitle her to relief. *Id.* Because Plaintiff cannot sustain a claim under the ECOA, her Complaint should be dismissed with prejudice.

    **B.    Summary Judgment**

Rule 12(b) of the Federal Rules of Civil Procedure further provides:

> If on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56.

Fed. R. Civ. Pro. 56 "mandates the entry of summary judgment against a party who… 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial'." *Rogosin v. Mayor and City Council of Baltimore*, 197 F.Supp. 2d 345, 349 (D. Md. 2002)(quoting *Celotex Corp. v.*

---

[2]    Comcast attempted to reach Plaintiff with respect to the deficiencies in her complaint on June 22 and June 26, 2006. To date, Plaintiff has not returned Comcast's telephone messages; thus, necessitating the filing of Comcast's Motion.

*Catrett*, 477 U.S. 317, 322 (1986)). A factual dispute, alone, will not defeat a motion for summary judgment. Instead, "only disputes over those facts that might affect the outcome of the case under the governing law are considered to be 'material.'" *Id.* Comcast is entitled to summary judgment because there are no material facts in dispute and Plaintiff is not entitled to prevail on her ECOA claim as a matter of law.

## II. PLAINTIFF FAILS TO STATE A CLAIM UNDER THE ECOA BECAUSE SHE DOES NOT ALLEGE THAT COMCAST WRONGFULLY DENIED HER CREDIT.

### A. The ECOA Does Not Apply to the Termination of Cable Services.

Plaintiff misguidedly attempts to assert a claim under the ECOA because Comcast terminated her cable television service. The ECOA has nothing to do with cable television. As Regulation B makes clear, the purpose of the ECOA "is to promote the availability of credit to all creditworthy applicants without regard to race, color, religion, national origin, sex or martial status. " 12 C.F.R. 202.1(b) (2005).[3] In other words, "[t]he animating principle of the ECOA and its state analogues is to prevent discrimination against those applying for credit." *Capitol Indemn. Corp. v. Aulakh*, 313 F.3d 200, 202 (4th Cir. 2002), *cert. denied,* 538 U.S. 1036 (2003); *see also* 12 C.F.R. 202(n) (2005)(regulations defines discrimination for purpose of the ECOA as "treat[ing] an applicant less favorably than other applicants.").[4]

---

[3] The ECOA was enacted in 1974 to combat perceived discriminatory practices in the lending industry against women credit applicants. Its goal is to ensure that all consumers, regardless of sex or marital status, have a legal right of equal access to credit. 1974 U.S.C.C.A.N. 1724, 1750. Amendments were passed in 1976 to extend the prohibitions against credit discrimination to encompass race, color and a multitude of other protected classes. *See* 15 U.S.C. § 1691(a)(1).

[4] The ECOA provides, in relevant part: "It shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction on the basis of race, color, religion, national origin, sex or marital status." 15 U.S.C. § 1691(a)(1).

To state a *prima facie* ECOA claim, Plaintiff must allege that (1) she was a member of a protected class; (2) she applied for credit from defendant; (3) she was qualified for the credit; and (4) despite qualification, she was denied credit. *Faulkner v. Glickman*, 172 F.Supp.2d 732, 737 (D. Md. 2001); s*ee also Chiang v. Veneman*, 385 F.3d 256, 259 ((3rd Cir. 2004); *Matthiesen v. Banc One Mortgage Corp.,* 173 F.3d 1242, 1246 (10th Cir.1999). Plaintiff fails to allege any of these criteria in her complaint.[5] Most fundamentally, she does not allege that Comcast discriminated against her in anyway with respect to providing her credit. Rather, she complains that Comcast cancelled her cable television service "apparently due to what was contained within her consumer report on file with Equifax." (Compl. ¶ 14.) As such, the ECOA is plainly inapplicable, and Plaintiff's Complaint fails as a matter of law.

**B.     Comcast Does Not Provide Credit, Nor Is It a Creditor Under the ECOA.**

Plaintiff is incapable of alleging that she applied for and was denied credit from Comcast. The ECOA defines "credit" as "the right granted by a creditor to a debtor to defer payment of debt or to incur debts and defer its payment [sic] or to purchase property or services and defer payment therefor." 15 U.S.C. § 1691a(d)(emphasis added). It further defines a "creditor" as a "*person who regularly extends,* renews, or continues credit; *any person who regularly arranges for the extension, renewal, or continuation of credit;* or any assignee of an original creditor who participates in the decision to extend, renew, or continue credit." *Id.* (emphasis added). Comcast does not extend, renew or continue credit to its cable television customers. *See* Ex. B ¶ 5; *see also id.* ¶ 6. Rather, it requires its customers to pay for their cable television service each month. *Id.* ¶ 7. Thus, as a matter of law, the ECOA does not apply to it.

---

[5]     That a plaintiff may be the member of a protected class because she is a women is insufficient in itself to state a claim under the ECOA. *See, e.g., Diaz-Verson v. Bank of America, N.A.*, 159 Fed. Appx. 71, 2005 WL 3076587 (11th Cir. 2005).

Even if one could somehow consider Comcast's monthly billing an extension of credit, at worst, it would constitute "incidental credit," which is explicitly exempt under § 202.3 of Regulation B of the ECOA. Extensions of credit qualify as "incidental" if they are: (1) not made pursuant to terms of a credit card account; (2) not subject to a finance charge, as defined in § 226.4; and (3) not payable in more than four installments by agreement. 12 C.F.R. § 202.3(c)(2); *see also Williams v. At&T Wireless Servs., Inc.*, 5 F. Supp.2d 1142, 1147 (W.D. Wash. 1998); *Mays v. Buckeye Rural Elec. Co-op., Inc.*, 277 F.3d 873, 2002 Fed. App. 0028P (6th Cir. 2002). Comcast has no credit card accounts, does not permit installment payments for its cable television services and does not impose finance charges. *See* Ex. B ¶ 8. Thus, Comcast's monthly billing is squarely exempt from the tentacles of the ECOA.[6]

In sum, Plaintiff's Complaint should be dismissed or, alternatively, summary judgment granted in favor of Comcast because Comcast does not provide credit, nor is it a creditor, for purposes of the ECOA.

### C. Plaintiff Does Not Allege that Comcast Discriminated Against Her On the Basis of Race, Color, Religion, National Origin, Sex or Martial Status.

Noticeably absent from Plaintiff's Complaint is any allegation that Comcast discriminated against Plaintiff on the basis of "race, color, religion, national origin, sex or martial status."[7] This omission is fatal. *See, e.g., Faulkner*, 172 F.Supp.2d at 737; *Chiang*, 385 F.3d at

---

[6] Comcast's situation is similar to that of the defendant in *Williams v. AT & T Wireless Servs., Inc.*, 5 F. Supp.2d at 1145-47. In that case, the court analyzed whether a cellular telephone company was subject to the ECOA. The court concluded that the cellular telephone company qualified as an incidental creditor under 12 C.F.R. § 202.3(c) because its credit transactions did not involve credit card accounts, finance charges, or installment payments. *Id.* at 1147. That is true of Comcast and the result in this case should be the same -- judgment should enter in favor of Comcast.

[7] Plaintiff is incapable of making such allegations in good faith. *See generally* Decl. Parker ¶ 10.

259; *Matthiesen*, 173 F.3d at 1246.  Plaintiff goes as far as to admit that Comcast terminated her cable television service "due to what was contained within her consumer report on file with Equifax." (Compl. ¶ 14.)  This admission is deadly because it conclusively establishes a non-discriminatory basis for the termination her cable service. *Faulkner*, 172 F.Supp.2d at 737.  Accordingly, Plaintiff's Complaint should be dismissed .

        D.        **Plaintiff's Complaint is Riddled With Other Fatal Problems.**

Having asserted a claim under a statute that does not apply, Plaintiff faces a multitude of other problems.  For example, to have a claim under the ECOA, a plaintiff most file a "completed application" for credit. 12 C.F.R. § 202.1(f); *see also Howard Oaks, Inc. v. Maryland National Bank*, 810 F. Supp. 674, 678 (D. Md. 1993).  Plaintiff never filed such an application, nor does she claim she did.  This omission requires dismissal of her Complaint. *Id.* Plaintiff also fails to allege her credit worthiness. *Faulkner*, 172 F.Supp.2d at 737.  Plaintiff's silence on this point compels dismissal of her action. *Id.*

## CONCLUSION

For all of the foregoing reasons, Plaintiff's Complaint should be dismissed with prejudice or, alternatively, summary judgment be granted in favor of Comcast.

        Respectfully submitted,

        /s/  Jan I. Berlage
        Jan I. Berlage (Atty #:  23937)
        Ballard Spahr Andrews & Ingersoll, LLP
        300 E. Lombard Street
        18th Floor
        Baltimore, MD  21202
        (410) 528-5600

        Attorneys for Comcast of Baltimore City, Inc.